IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLES LOUIS PETERSON, #193772, )
                                 )
            Plaintiff,            )
                                 )
      v.                          )        CASE NO. 2:10-CV-669-WHA
                                 )              [WO]
                                 )
LOUIS BOYD, et al.,              )
                                 )
            Defendants.          )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by

Charles Louis Peterson ["Peterson"], a state inmate, challenging actions taken against him

during his incarceration at the Easterling Correctional Facility ["Easterling"].   In this

complaint, Peterson alleges correctional officials violated his constitutional rights with

respect to his classification as a restricted offender and challenges the conditions of

confinement at Easterling.   *Complaint - Doc. No. 1* at 2-3.   Peterson names Louis Boyd,

the warden of Easterling, Sherry Seals, the classification supervisor at this facility, and

Larry Anglin, his assigned classification specialist, as defendants.   Peterson seeks monetary

damages, requests issuance of an order requiring the defendants to remove him from

restricted offender status and demands a transfer from Easterling.   *Id*. at 4.

The defendants filed a special report and supporting evidentiary materials addressing

Peterson's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat this report as a motion for summary judgment.  *Order of October 5, 2010 - Doc. No. 12*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Petersonberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Petersonberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord

3

> deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Peterson is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant

of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment....").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will

not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*,

906 F.2d 667, 670 (11ᵗʰ Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Peterson fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III.  DISCUSSION

### A.  Absolute Immunity

Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11ᵗʰ Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11ᵗʰ Cir. 1997).

In light of the foregoing and under the facts of this case, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary

damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Custody Classification

To the extent Peterson argues his "clean prison record" entitles him to recommendation for and/or placement in a more favorable custody classification, *Complaint - Doc. No. 1* at 3, this claim provides no basis for relief as an inmate confined in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Francis v. Fox*, 838 F.2d 1147 (11th Cir. 1988); *Jones v. Diamond,* 594 F.2d 997 (5th Cir. 1979).

### C.  The Equal Protection Claim

Peterson is currently incarcerated on a 1997 conviction for felony murder imposed upon him by the Circuit Court of Montgomery County, Alabama pursuant to his guilty plea. The circumstances underlying Peterson's conviction establish that he participated in the robbery of a fast-food restaurant during which the assistant manager of the restaurant was killed.  *Defendants' Exhibit D - Doc. No. 11-4* at 5-6.

Peterson maintains the defendants deprived him of equal protection because they

refused to recommend that he be removed and/or failed to ensure his removal from restricted offender status while undertaking these actions for other inmates with serious felony convictions. *Complaint - Doc. No. 1* at 3. In an amendment to his complaint, Peterson identifies three inmates, Anthony Henderson, Cedric Kennedy and Anthony Hicks, whom he believes had convictions involving the death of a victim but "received more favorable treatment than the plaintiff...." *Amendment to the Complaint - Doc. No. 5* at 1. In his response to the defendants' report, Peterson identifies Edgar B. Riggins as another inmate who has received favorable treatment from the defendants regarding restricted offender status while Peterson's status remains unchanged. *Response - Doc. No. 14* at 2.

The defendants deny they acted in violation of Peterson's equal protection rights. Specifically, the defendants maintain that the Central Restriction Review Committee ["CRRC"],[2] in accordance with applicable classification criteria and due to Peterson's conviction for felony murder - a murder that occurred during the course of a robbery, determined Peterson should be classified as a restricted offender. *Defendants' Exhibit D (Affidavit of Stephanie Atchison - Assistant Director of Classification) - Doc. No. 11-4* at 1-2 (citations to exhibits omitted). The revised classification criteria, which became effective on October 15, 2009 and removed some offenses from eligibility for restricted

---

[2]The defendants are not members of the Central Restriction Review Committee.

offender status, continued, however, to delineate such status for those inmates convicted of robbery-murder - "[k]illing during the commission of a robbery." *Attachment A to Defendants' Exhibit D (Applicable Classification Criteria) - Doc. No. 11-4* at 3; *Defendants' Exhibit B - Doc. No. 11-2* at 3 (same). "Inmate Peterson is [properly classified as] a restricted offender.  He is convicted of a murder which occurred during the course of a robbery, which would fall under criteria #3 of the restricted offenses....  Inmate Peterson has not been treated differently than other inmates [convicted of robbery-murder] and the inmates listed [by Peterson] have not received more favorable treatment than inmate Peterson.  All inmates have been judged based on the nature of their criminal convictions." *Defendants' Exhibit D (Affidavit of Stephanie Atchison - Assistant Director of Classification) - Doc. No. 11-4* at 1-2 (citations to exhibits omitted).

On September 23, 2010, Ms. Atchison submitted Peterson's case to the CRRC for review and possible removal of his classification as a restricted offender. *Defendants' Attachment B to Exhibit D (CRRC Review Worksheet) - Doc. No. 11-4* at 4.  The CRRC reviewed the circumstances of Peterson's conviction and determined Peterson should remain a restricted offender as he met the requisite criteria for such restriction due to his felony murder conviction arising from his participation in a robbery-murder.  *Id*.  In addition, the defendants maintain that Peterson is not similarly situated to the inmates identified in his amendment to the complaint.  *Defendants' Exhibit D (Affidavit of*

*Stephanie Atchison - Assistant Director of Classification) - Doc. No. 11-4* at 1-2 ("Anthony

Hicks 133302 was convicted of the manslaughter of the victim in a drive-by shooting. This

offense does not fall into any of the criteria of the restricted categories and the restriction

was removed by the CRRC. Cedric Kennedy 160004 was convicted of the attempted

murder of two victims during the course of a robbery. The restriction on this inmate was

lifted by the CRRC because no actual death occurred. Anthony Henderson 134945 is a

restricted offender who has not yet been submitted for CRRC review."). It is likewise

apparent that the remaining inmate identified in Peterson's response, Edgar B. Riggins, is

not similarly situated to Peterson because this inmate is convicted only of murder, an

offense which, standing alone, is not considered a restricted offense. *Defendants'*

*Attachment A to Exhibit D (Applicable Classification Criteria) - Doc. No. 11-4* at 3. The

defendants further maintain that in determining whether an inmate should be removed from

restricted offender status "[a]ll inmates have been judged based on the nature of their

criminal convictions." *Defendants' Exhibit D (Affidavit of Stephanie Atchison - Assistant*

*Director of Classification) - Doc. No. 11-4* at 2.

"Despite the tendency of all rights 'to declare themselves absolute to their logical

extreme,' there are obviously limits beyond which the equal protection analysis may not

be pressed.... The Fourteenth Amendment 'does not require absolute equality or precisely

equal advantages,'... nor does it require the State to 'equalize [prison] conditions.'" *Ross*

*v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)."  *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006).  "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even

arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment submitted by the defendants, Peterson bears the burden of producing evidence which would be admissible at trial sufficient to show:  (i) the defendants provided more favorable treatment to other similarly situated inmates, i.e., inmates convicted of felony murder involving a robbery-murder; and (ii) the decision to deny him favorable treatment resulted from intentional discrimination. *Celotex,* 477 U.S. at 322-324; *Anderson,* 477 U.S. at 249 (To preclude summary judgment, plaintiff must present significant probative evidence showing defendants provided more favorable treatment to similarly situated persons and did so as the result of intentional discrimination.); *E & T Realty Company v. Strickland,* 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied,* 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendants in providing the challenged disparate treatment is required.  "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause.").  The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson,* 477 U.S.

at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).

Peterson makes specious and conclusory allegations regarding a denial of equal protection.  The only probative evidence before the court indicates that the defendants did not treat Peterson differently from inmates with actual comparative offenses and further demonstrates that the actions undertaken in Peterson's classification process were based solely on his conviction for felony murder - a murder committed during the course of a robbery.  As previously recognized, *infra* at p. 8, an Alabama inmate has no constitutional right to a particular custody classification.  Absent the existence of a constitutionally protected liberty interest, this court must "look to see if persons similarly situated to the plaintiff" - persons with convictions for murder during a robbery - "have been treated differently." *Hammond*, 669 F.Supp. at 1563; *Sweet*, 467 F.3d at 1318-1319.  Although Peterson alleges that "other inmates ... [with] the same charge as Plaintiff" have been recommended for/removed from restricted offender status, *Complaint - Doc. No. 1* at 3, he does not identify the convictions of three of these other inmates so as to demonstrate they were actually similarly situated to him.  Furthermore, the documents submitted by the defendants demonstrate the convictions of inmates Hicks and Kennedy are not restricted offenses while inmate Henderson had not been recommended for removal from restricted offender status at the time Peterson initiated this cause of action.  With respect to the

inmate for which Peterson provides a conviction, Edgar B. Riggins (simple murder), this conviction is clearly distinguishable from Peterson's conviction for felony murder and, unlike felony murder arising from commission of a robbery-murder, is not an offense unilaterally considered a restricted offense.   Thus, Peterson fails to identify any other inmate with a similar offense towards whom the defendants acted in a more favorable manner and his "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners."   *Sweet*, 467 F.3d at 1319; *Hammond*, 669 F.Supp. at 1563 (emphasis in original) ("To the extent that any equal protection analysis is required [on the plaintiff's assertion of discrimination], absent the plaintiff's establishing a clearly protected liberty or property interest by the Constitution ..., this Court [must] look to see if persons similarly situated to the plaintiff have been treated differently.... [T]here is ***no*** evidence that any [individuals] in the same position as the plaintiff have been treated differently from the plaintiff....  The plaintiff has offered the Court nothing on which to base his equal protection claim.  Accordingly, it is the opinion of this Court that the plaintiff's equal protection claim is without merit.").

In addition, Peterson does not allege that the defendants subjected him to adverse treatment based on some constitutionally impermissible reason; instead, he simply makes the conclusory assertion that differential treatment of serious offenders resulted in an equal protection violation.  Specifically, as the sole basis for his equal protection claim, Peterson

relies exclusively on the fact that he remains a restricted offender while other inmates have been recommended for and removed from this classification status.  The mere differential treatment referenced by Peterson does not implicate a violation of the Equal Protection Clause.  *Sweet*, 467 F.3d at 1319; *E & T Realty*, 830 F.2d at 1114-1115; *Horner v. Kentucky High School Athletic Association*, 43 F.3d 265, 276 (6th Cir. 1994).  Moreover, it is undisputed that correctional officials based the classification of Peterson as a restricted offender on his conviction for felony murder, specifically, a murder during the course of a robbery.  Thus, the record is devoid of evidence that the defendants or any other correctional official acted due to purposeful discrimination.  Under applicable federal law, the allegations made by Peterson are insufficient to show an equal protection violation and summary judgement is due to be granted in favor of the defendants on this claim.

### D.  Conditions Claims

Peterson complains that while confined at Easterling he has endured "cruel and unusual punishment because ... of condition[s] of confinement including:  overcrowding; excessive noise; insufficient locker storage space; inadequate restroom [facilities]...; improper ventilation and cooling..; and  housing with mentally and physically ill inmates." *Complaint - Doc. No. 1* at 3.

The defendants deny that the conditions about which Peterson complains violated his constitutional rights.  Defendant Boyd addresses Peterson's conditions claims as

follows:  "Easterling Correctional Facility is in fact housing more inmates tha[n] designed

for.   Accordingly, the level of noise associated with the increased numbers would be

expected.   The locker storage space is the same at all institutions, as the beds come with

attached locker boxes.   Restrooms are cleaned by assigned cleaners on a 24-hour basis.

There are no major heating or cooling problems.   When heating or cooling problems occur,

there is a Maintenance Department with adequate personnel to handle the problems.   All

dorms have fans and ventilation is appropriate as all windows can be opened, and all vents

may be opened or closed.   Easterling Correctional Facility along with every institution in

the state, will house physically ill inmates and those mentally challenged inmates who

qualify for residency...."  *Defendants' Exhibit A (Affidavit of Louis Boyd) - Court Doc. No.

11-1* at 1.   In sum, defendant Boyd maintains that Peterson was exposed to neither

inhumane nor unsanitary conditions during his incarceration at Easterling.   *Id.*

Only those conditions which deny inmates "the minimal civilized measure of life's

necessities" are grave enough to violate the Eighth Amendment.  *Rhodes v. Chapman*, 452

U.S. 337, 347 (19891).[3]  "'[T]he Constitution does not mandate comfortable prisons.'  *Id.*

at 349, 101 S.Ct. at 2400.   If prison conditions are merely 'restrictive and even harsh, they

are part of the penalty that criminal offenders pay for their offenses against society.'  *Id.*

---

[3]The Eighth Amendment applies to the states through the Fourteenth Amendment. *Rhodes,* 452 U.S. at 344-345.

at 347, 101 S.Ct. at 2399.  Generally speaking, prison conditions rise to the level of an

Eighth Amendment violation only when they 'involve the wanton and unnecessary

infliction of pain.'  *Id.*"  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11ᵗʰ Cir. 2004).

A prison official may likewise be held liable under the Eighth Amendment for acting

with "'deliberate indifference'" to an inmate's health or safety when the official knows that

the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to

take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct.

1970, 1974 (1994).  A constitutional violation occurs only when a plaintiff establishes the

existence of "a substantial risk of serious harm, of which the official is subjectively aware,

... and [that] the official does not respond[] reasonably to the risk'...."  *Marsh v. Butler*

*County*, 268 F.3d 1014, 1028 (11ᵗʰ Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844,

114 S.Ct. at 1982-1983.  Thus, in order to survive summary judgment on his claims

challenging the conditions of confinement at Easterling, Peterson is "required to produce

sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate

indifference to that risk; and (3) causation."  *Hale v. Tallapoosa County*, 50 F.3d 1579,

1582 (11ᵗʰ Cir. 1995); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11ᵗʰ Cir. 2003) ("To be

deliberately indifferent, Defendants must have been 'subjectively aware of the substantial

risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"'

*Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111

18

S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists-and the prison official must also 'draw that inference.' *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.").

The living conditions within a correctional facility will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] ... [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347. "Conditions ... alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency .... But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347. To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id*. at 366. In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

Despite his allegations regarding the conditions of confinement at Easterling,

Peterson does not establish that these conditions denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347.   Furthermore, Peterson fails to demonstrate any deliberate indifference or reckless disregard by the named defendants with respect to his health or safety.   Specifically, Peterson does not identify any particular incident or condition of which defendants Boyd, Anglin and Seals were aware from which an inference could be drawn that a substantial risk of serious harm existed.   The record is also devoid of any evidence showing that the defendants drew the requisite inference. Consequently, summary judgment is due to be granted in favor of the defendants on the plaintiff's conditions claims.   *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

### E.  Transfer from Easterling

Peterson asserts he is entitled to a transfer from Easterling.   *Complaint - Doc. No. 1* at 4.   This claim provides no basis for relief as a convicted prisoner has no constitutionally protected right to confinement in a particular correctional facility. *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (no liberty interest arising from Due Process Clause in obtaining transfer to less secure prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *see also Olim v. Wakinekona*, 461 U.S. 238, 245-246

(1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution).  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in confinement in the least restrictive prison environment for which he may be eligible because the resulting restraints are not so severe that they exceed the sentence imposed upon him.  *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  Although the plaintiff's confinement at Easterling may entail "more burdensome conditions" than that of some other facility, this confinement is "'within the normal limits or range of custody which the conviction has authorized the State to impose.'  *[Meachum,* 427 U.S. at 225]; *see also Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)."  *Sandin*, 515 U.S. at 478.  Consequently, the failure to transfer Peterson to a correctional facility which he deems more desirable does not rise to the level of a constitutional violation.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before June 3, 2013 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 14th day of May, 2013.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE